UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                    :
ETERNAL ASIA SUPPLY CHAIN               :
MANAGEMENT (USA) CORP.,                  :
                                    Plaintiff,   :            12 Civ. 6390 (JPO)
                                                    :
                   -against-                      :            MEMORANDUM AND
                                                    :                 ORDER
YIAN CHEN a/k/a DAVID CHEN,            :
                                    Defendant.  :
                                                    :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      Presently before the Court are Plaintiff Eternal Asia Supply Chain Management (USA)

Corporation's motion for default judgment and Defendant David Chen's motion to dismiss for

lack of personal  jurisdiction.  For the reasons that follow, Plaintiff's motion is denied and

Defendant's motion is granted.

I.       **Background**[1]

      Plaintiff alleges that it is the assignee of claims maintained by EA Display Ltd. ("EAD")

against Defendant, a California resident, relating to Defendant's acts as President and a director

of Amergence Technology, Inc. ("Amergence").  Specifically, Plaintiff alleges that in June 2010,

Amergence—acting by and through Defendant—enticed, cajoled, and solicited EAD to enter

into a purported joint venture agreement forming a corporation in the State of California for the

---

[1] A motion to dismiss for lack of personal jurisdiction is "'inherently a matter requiring the
resolution of factual issues outside of the pleadings[,] . . . [and] all pertinent documentation
submitted by the parties may be considered in deciding the motion.'"  *Yellow Page Solutions,
Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 Civ. 5563, 2001 WL 1468168, at *1 (S.D.N.Y. Nov.
19, 2001) (citation omitted).  Therefore, the following facts are drawn from the complaint,
declarations, and exhibits submitted by the parties, and are construed in the light most favorable
to Plaintiff.  *Id.; see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

purported purposes of developing a company with product, channel, marketing, operations, service and financial return.  Plaintiff further alleges that Defendant and Amergence planned to and did defraud EAD out of hundreds of thousands of dollars in merchandise and EAD's initial investment in working capital.  Plaintiff alleges causes of action for fraud and conversion.

The Complaint in this case was filed on August 21, 2012.  On January 7, 2013, Plaintiff obtained a Clerk's Certificate of Default as to Defendant.  On February 11, 2013, Defendant filed a motion to dismiss for lack of personal jurisdiction.  The next day, February 12, 2013, Plaintiff filed a motion requesting entry of default judgment against Defendant.

In support of his motion to dismiss, Defendant has submitted an affidavit in which he explains that he lacks connections to New York:[2]

> I have never been a resident of New York.  I have never maintained a bank account in New York.  I have never had a telephone listing or a mailing address in New York.  I have never owned, leased, or otherwise possessed any real or personal property in New York.  I have never paid any taxes to New York. I have never worked for an entity incorporated or registered in New York.  I do not have business relationships with any New York residents or businesses incorporated in New York.  I have never made a general appearance as a party in any lawsuit in New York.

Defendant adds that he currently resides in California, that he last visited New York about five to seven years ago for a day trip, and that "it would be a severe hardship for [him] to defend a lawsuit in the Southern District of New York" because he "cannot afford to travel to New York as would be necessary for [him] to meet with [his] counsel or to appear in court."  With respect to Amergence, Defendant makes the following statements:

---

[2] This affidavit also includes statements about the alleged inadequacy of service of process upon Defendant, but the Court need not address that issue due to its conclusion that Plaintiff has failed to adduce a basis for personal jurisdiction consistent with New York law and due process.

> Amergence Technology, Inc., a California entity of which I was then President, a shareholder and a member of the board of directors, entered into a joint venture agreement with [EAD], a Chinese entity, to form a California entity called Rich Tech International Co., Ltd.   Appendix A, Paragraph D(4) of that agreement stated that the agreement would be "governed by, construed and interpreted in accordance with, the laws of the State of Calfornia" . . . .  I never spoke or otherwise dealt with any representative of [Plaintiff] or any other New York persons or entities regarding the transaction(s) which are the subject of this case.  I only interacted with [EAD] directly.

In an affidavit, counsel for Plaintiff states that the joint venture undertaken by Defendant and EAD contemplated the sale of electronic products at reduced prices to "wholesalers and suppliers throughout the country including in New York State."  He states that Defendant, "through his companies[,] derived a portion of their [sic] revenue from interstate commerce, and made sales of goods within New York State and derived revenues from such sales," adding that "[i]t is reasonably foreseeable that [Defendant] knew goods would be delivered and sold in New York State, as it is a major electronics market."  Counsel to Plaintiff adds that:

> On Amergence's website, they describe themselves as a "Strong Sales and Global Purchasing Network" and describe how they have "channels in place around the globe to purchase or sell consumer electronics products.
>
> Amergence's website further describes how their "large warehouse is available to use as a redistribution center."

In the alternative, Plaintiff requests jurisdictional discovery to ascertain the extent of Defendant's contacts with and activities in New York State.

## II.    Discussion

### A.    Motion for Default Judgment

Federal Rule of Civil Procedure 55(c) authorizes a court to "set aside an entry of default for good cause."  "In determining whether to set aside a party's default, the district court should

consider principally '(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.'" *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). "Because there is a preference for resolving disputes on the merits, doubts should be resolved in favor of the defaulting party." *Id.* (quotation marks and citation omitted). Accordingly, "'good cause' under Rule 55(c) should be construed generously, and [t]he dispositions of motions for entries of defaults . . . and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case." *Del Med. Imaging Corp. v. CR Tech USA, Inc.*, No. 08 Civ. 8556, 2010 WL 1487994, at *4 (S.D.N.Y. Apr. 13, 2010) (citations omitted). Here, there is no evidence that Defendant's default was "willful," there is no reason to believe that setting aside the entry of default would prejudice Plaintiff, and Defendant has presented a meritorious defense based on lack of personal jurisdiction. It is also significant that Defendant filed his motion to dismiss *before* Plaintiff filed its motion for default judgment, thereby actively engaging in this case and asserting meritorious arguments at an early stage following the entry of default.

Accordingly, the entry of default against Defendant is set aside pursuant to Rule 55(c) and the motion for default judgment is denied.

### B.     Motion to Dismiss Granted Due to Lack of Personal Jurisdiction

#### 1.     General Legal Standard for Personal Jurisdiction

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted). "In order to survive a motion to dismiss for lack of personal

jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). "Such a showing entails making 'legally sufficient allegations of jurisdiction,' including 'any averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'" *Penguin Gr.*, 609 F.3d at 35 (citation omitted). In the absence of jurisdictional discovery, "allegations of jurisdictional fact must be construed in the light most favorable to the plaintiff." *National Union Fire Ins. Co. of Pittsburgh, PA. v. BP Amoco PLC*, 319 F. Supp. 2d 352, 357 (S.D.N.Y. 2004) (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). "However, '[c]onclusory allegations are not enough to establish personal jurisdiction' and the allegations must be well-pled." *Sikhs for Justice v. Nath*, No. 10 Civ. 2940, 2012 WL 4328329, at *22 (S.D.N.Y. Sept. 21, 2012) (quoting *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003)); *see also Accurate Grading Quality Assur., Inc. v. Thorpe*, No. 12 Civ. 1343, 2013 WL 1234836, at *2 (S.D.N.Y. Mar. 26, 2013) ("The Court . . . will not draw argumentative inferences' in the plaintiff's favor and need not accept as true a legal conclusion couched as factual allegation." (quotation marks and citations omitted)). District courts enjoy "considerable procedural leeway" in addressing Rule 12(b)(2) motions and may decide them on "the basis of affidavits alone." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981); *accord Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, No. 11 Civ. 7268, 2013 WL 1248416, at *3 (S.D.N.Y. Mar. 27, 2013).

A prima facie case for personal jurisdiction must satisfy three elements: (1) proper service of process upon the defendant; (2) a statutory basis for personal jurisdiction; and (3) accordance with constitutional due process principles. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012). Because Plaintiff cannot satisfy the second and third requirements, the Court does not address service of process.

5

With respect to the requisite statutory basis, "[t]he breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." *Thomas*, 470 F.3d at 495.  In this case, that rule directs the Court's attention to the laws of New York.  To establish personal jurisdiction over a defendant under New York law, a plaintiff must "demonstrate either that the defendant was 'present' and 'doing business' in New York within the meaning of [CPLR] § 301, or that the defendant committed acts within the scope of New York's long-arm statute, [CPLR] § 302." *Schultz v. Safra Nat. Bank of New York*, 377 Fed. Appx. 101, 102 (2d Cir. 2010).

Under § 301, "a foreign corporation is subject to general personal jurisdiction in New York if it is 'doing business' in the state." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (citing N.Y. C.P.L.R. § 301).  "A corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Id.* (internal quotation marks and bracketing omitted).  "In order to establish that this standard is met, a plaintiff must show that a defendant engaged in continuous, permanent, and substantial activity in New York." *Id.* (internal quotation marks omitted).

Section 302(a), New York's long-arm statute, provides as follows:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:
>
> (1) transacts any business within the state or contracts anywhere to supply goods or services within the state; or

(2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

(3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

N.Y. C.P.L.R. § 302(a).  This section confers "specific jurisdiction over a non-domiciliary defendant arising out of particular acts."  *Accurate Grading*, 2013 WL 1234836, at *2.

"[I]n determining whether personal jurisdiction may be exercised under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action aris[es] from such a business transaction."  *Licci*, 673 F.3d at 60 (quotation marks and citation omitted).  "[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York."  *Id.* at 61 (internal quotation omitted).  "[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."  *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (citing *Licci*, 673 F.3d at 66); *see also Lyons v. Rienzi & Sons, Inc.*, 856 F. Supp. 2d 501, 507 (E.D.N.Y. 2012).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or

7

relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (citation omitted).

Accordingly, "the exercise of personal jurisdiction must comport with constitutional due process

principles." *Licci*, 673 F.3d at 60.  As the Second Circuit has explained:

> Due process permits a court to exercise personal jurisdiction over a
> non-resident where the maintenance of the suit would not offend
> traditional notions of fair play and substantial justice.   To
> determine whether this is so, we apply a two-step analysis in any
> given personal jurisdiction case.   First, we ask whether the
> defendant has sufficient minimum contacts with the forum to
> justify the court's exercise of personal jurisdiction . . . .   If the
> defendant has sufficient minimum contacts, we proceed to the
> second stage of the due process inquiry, and consider whether the
> assertion of personal jurisdiction is reasonable under the
> circumstances of the particular case.

*Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008) (quotation marks and

internal citations omitted).  These requirements interact: "the weaker the plaintiff's showing [on

minimum contacts], the less a defendant need show in terms of unreasonableness to defeat

jurisdiction." *Tymoshenko v. Firtash*, No. 11 Civ. 2794, 2013 WL 1234943, at *3 (S.D.N.Y.

Mar. 27, 2013) (internal quotation marks and citations omitted).

> Courts recognize two forms of personal jurisdiction, specific and general:

> Specific jurisdiction exists when a State exercises personal
> jurisdiction over a defendant in a suit arising out of or related to
> the defendant's contacts with the forum; a court's general
> jurisdiction, on the other hand, is based on the defendant's general
> business contacts with the forum state and permits a court to
> exercise its power in a case where the subject matter of the suit is
> unrelated to those contacts.   Because general jurisdiction is not
> related to the events giving rise to the suit, courts impose a more
> stringent minimum contacts test, requiring the plaintiff to
> demonstrate the defendant's continuous and systematic general
> business contacts.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996) (quotation

marks and citations omitted).  "[I]t is essential . . . that there be some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

### 2.      Application of Law to Facts

#### a.      Jurisdiction Under New York Law

"Under CPLR § 301[,] general jurisdiction, which arises out of a defendant's contacts with the forum even if the contacts are unrelated to the action before the Court, is established over a foreign [defendant] engaging in a continuous and systematic course of doing business in New York." *Doe v. Delaware State Police*, No. 10 Civ. 3003, 2013 WL 1431526, at *6 (S.D.N.Y. Apr. 4, 2013). Defendant states that he owns no property in New York, controls no businesses within New York or with New York persons or entities, pays no New York taxes, and has not visited New York in over five years. In response, Plaintiff musters only the vague allegation that Plaintiff's business venture in California with a Chinese company contemplated the sale and movement of goods in interstate commerce, which could have included New York State. These allegations fall far short of the required showing of a "continuous and systematic course of doing business in New York" prerequisite to jurisdiction under CPLR § 301.

In the alternative, Plaintiff might seek to rely on CPLR § 302(a)(1), which provides, in pertinent part, that a court "may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state," so long as the plaintiff's "cause of action aris[es] from" that transaction." It is possible that, read in the light most favorable to Plaintiff, Defendant purposefully availed himself of the New York forum by selling electronics products in a national market, including New York.[3] The Court need not

---

[3] To be clear, however, Plaintiff could *not* satisfy the "transacts business" requirement by gesturing to Defendant's website, which describes "channels in place around the globe to

resolve that question, however, because Plaintiff has failed to identify any articulable nexus or substantial relationship between its claims and Defendant's actions in New York. *See Chang Young Bak v. Metro-N. R. Co.*, No. 12 Civ. 3220, 2013 WL 1248581, at *3 (S.D.N.Y. Mar. 26, 2013) (noting that, because § 302 is a "specific jurisdiction provision," it requires that "the cause of action arise from defendant's connection to New York"). The alleged fraud by a California resident on a Chinese company in the course of a joint venture in California simply does not bear the necessary connection to New York. In fact, it bears no connection whatsoever.

Finally, Plaintiff might look to CPLR § 302(a)(3), which authorizes jurisdiction where a defendant "commits a tortious act without the state" and thereby causes "injury to a person or property within the state," subject to two conditions: "(i) [he] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) [he] expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." This claim would fail, however, because Plaintiff has not identified any "injury to a person or property" within New York State. The injury in this case was suffered by EAD, not by Plaintiff, and the bare fact that EAD decided to assign its claim to Plaintiff does not shift the locus of the injury.[4] *Cf. Buccellati Holding Italia*, 2013 WL 1248416, at *6

---

purchase or sell consumer electronics products" and describes a "large warehouse" as "available to use as a redistribution center." Such vague allegations of an online presence, without any specific allegations linking the online presence to New York state or a targeting of New York state consumers, would not suffice under CPLR § 302(a). *See Lawson v. Full Tilt Poker Ltd.*, No. 11 Civ. 6087, 2013 WL 950871, at *4 (S.D.N.Y. Mar. 7, 2013) (noting that only "[a]n individual who operates or maintains a comprehensive service website targeted at New York state consumers will meet the 'transacts business' requirement.").

[4] Plaintiff appears to address the requirements of CPLR § 302(a)(3)(i) and (ii) when it argues that "[s]urely Defendant Chen through his companies obtained some portion of their revenue from

(S.D.N.Y. Mar. 27, 2013) ("[T]he vast weight of authority is that a finding of personal jurisdiction may not rest solely on an act such as this instigated by a plaintiff.").

Because Plaintiff cannot identify any statutory basis for personal jurisdiction over Defendant, this case must be dismissed.

### b.      Constitutional Limits on Personal Jurisdiction

Even if Plaintiff had alleged facts sufficient to support personal jurisdiction under New York's long arm law, the Court would nonetheless dismiss this case on due process grounds.

First, the facts alleged by Plaintiff do not come close to describing continuous and systematic general business contacts, and therefore fall far short of the standard for general jurisdiction. *See Metro. Life Ins.*, 84 F.3d at 568. This is as true of Defendant's website, *see UTC Fire & Sec. Americas Corp., Inc. v. NCS Power, Inc.*, 844 F. Supp. 2d 366, 371 (S.D.N.Y. 2012) ("It is well-established that a website accessible to New York residents—even a website with interactive components—is insufficient to support general jurisdiction." (collecting cases)), as it is of their placement of goods into the stream of national commerce, *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2857 (2011).

Second, the Constitution does not permit an exercise of specific jurisdiction over Defendant. With respect to the minimum contacts inquiry, Plaintiff relies on two factual allegations: (1) that Defendant placed goods into the stream of national commerce with knowledge that some of those goods might end up in New York, a major electronics center, and

---

interstate commerce, and made sales of goods within New York State and derived revenues from such sale. It is reasonably foreseeable that Defendant Chen knew goods would be delivered and sold in New York State, as it is a major electronics market." Plaintiff also invokes Amergence's website in support of these claims. The Court does not rule on whether these allegations satisfy the requirements set forth in the subsections of CPLR § 302(a)(3), since Plaintiff does not satisfy the primary condition of that part of New York's long arm statute.

(2) that Amergence maintained a website on which it advertised "channels in place around the globe to purchase or sell consumer electronics products" and a "large warehouse . . . available to use as a redistribution center."  Neither of these factual allegations is sufficient.

Plaintiff's first factual allegation directly implicates the "stream of commerce" theory of specific personal jurisdiction that a plurality of a divided Supreme Court recently attempted to clarify in *J. McIntyre Mach., Ltd. v. Nicastro*:

> This Court has stated that a defendant's placing goods into the stream of commerce "with the expectation that they will be purchased by consumers within the forum State" may indicate purposeful availment.  But that statement does not amend the general rule of personal jurisdiction.  It merely observes that a defendant may in an appropriate case be subject to jurisdiction without entering the forum—itself an unexceptional proposition— as where manufacturers or distributors "seek to serve" a given State's market.  The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign.  In other words, the defendant must "purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Sometimes a defendant does so by sending its goods rather than its agents.  The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.

131 S. Ct. 2780, 2788 (2011) (citations omitted).  In the concurring (and controlling) opinion, Justice Breyer agreed that in the absence of a "regular . . . flow" or "regular course" of sales to a state, and the absence of "something more, such as special state-related design, advertising, advice, marketing, or anything else," the Constitution does not allow jurisdiction on the basis of a stream of commerce theory.  *Id.* at 2792 (Breyer, J., concurring) (quotation marks omitted).

Applying that rule to this case, Plaintiff's allegations do not suffice to support a finding of minimum contacts.  Plaintiff has not alleged a regular course of sales in New York, nor has it

alleged anything "more" that reveals particular targeting of New York State.  Rather, Plaintiff alleges only that Defendant intended to place goods into a national stream of commerce and knew (or should have known) that some of them might end up being sold in New York.  While the potential volume of sales of Defendant's products makes this a close question, since Plaintiff alleges that New York is a major market for electronics goods, the absence of any allegations of a "regular course" of sales in New York and the absence of anything "more" to indicate targeting of the New York forum preclude a finding of minimum contacts on this basis.[5]

Plaintiff also suggests that the website maintained by Amergence supports a finding of the requisite minimum contacts.  That argument does not succeed.   Although courts and scholars have recognized that the application of traditional due process inquiries for personal jurisdiction to the Internet may raise novel and hard questions, *see, e.g.*, *ALS Scan v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002); *Sportschannel New England, LLP v. Fancaster, Inc.*, 2010 WL 3895177 (D. Mass., Oct. 1, 2011); *Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 297 F. Supp. 2d 1154, 1160-61 (W.D. Wis. 2004); Martin Redish, *Of New Wine and Old Bottles: Personal Jurisdiction, the Internet, and the Nature of Constitutional Evolution*, 38 Jurimetrics J. 575, 578 (1998), this case falls within the heartland of traditional due process jurisprudence.

In a leading case, *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, a court in the Western District of Pennsylvania concluded that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."  952 F. Supp. 1119, 1124.  That court described a "sliding scale" to guide the due process inquiry for Internet-based minimum contacts:

---

[5] This conclusion would remain the same if the Court applied the *Nicastro* plurality's 'submission to a sovereign' test, as there is no factual support for the proposition that Defendant manifested any intent with respect to submission to the laws of New York State.

> At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.  At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction.  The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* at 1124 (citations and footnotes omitted).

The Second Circuit, however, has noted that "[w]hile analyzing a defendant's conduct under the *Zippo* sliding scale of interactivity may help frame the jurisdictional inquiry in some cases . . . traditional statutory and constitutional principles remain the touchstone of the inquiry." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007) (quotation marks and citations omitted).  The Second Circuit is thus aligned with other circuits skeptical of calls for major doctrinal innovation while applying settled principles of personal jurisdiction to the Internet. *See, e.g.*, *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 758 (7th Cir. 2010) ("[W]e think that the traditional due process inquiry described earlier is not so difficult to apply to cases involving Internet contacts that courts need some sort of easier-to-apply categorical test."); *GTE New Media Servs., Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) ("We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction.  The Due Process Clause exists, in part, to give a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render

14

them liable to suit." (citation omitted)).  *But see Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 711 (8th Cir. 2003) ("The circuits that have addressed which analytical model to apply to a case of general jurisdiction have split on whether to accept the *Zippo* 'sliding scale.'" (citations omitted)); *ALS Scan*, 293 F.3d at 712 ("Applying the traditional due process principles governing a State's jurisdiction over persons outside of the State based on Internet activity requires some adaptation of those principles because the Internet is omnipresent.").

Here, Plaintiff suggests that Defendant has engaged in minimum contacts through the Amergence website, which describes the Amergence business and gestures toward a larger commercial operation, including a warehouse available for use as an operation center.  This passive website, which does not afford users an interface for commercial activity or expressly target the New York market in any way, could not suffice as a basis for personal jurisdiction. *See, e.g.*, *McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir. 2005) ("[T]he mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum.  Something more is necessary, such as interactive features which allow the successful online ordering of the defendant's products." (citations omitted)); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546 (7th Cir. 2004) ("[A] defendant's maintenance of a passive website does not support the exercise of personal jurisdiction over that defendant in a particular forum just because the website can be accessed there."); *ALS Scan*, 293 F.3d at 714 ("[A] person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received.  Such passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action

15

cognizable in courts located in the State."); *see also Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (holding that "[t]he operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state" where "the website is interactive to a degree that reveals specifically intended interaction with residents of the state" (quotation marks and citations omitted)); *Soma Medical International v. Standard Chartered Bank*, 196 F.3d 1292 (10th Cir. 1999) (finding no personal jurisdiction where "[t]he website appears to be a passive Web site that does little more than make information available to those who are interested and one in which [the defendant] has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." (internal quotation marks and citations omitted)).[6]

Separate and apart from the minimum contacts inquiry, Plaintiff must also demonstrate that it would be "reasonable under the circumstances of [this] particular case" for the Court to exercise personal jurisdiction over Defendant.  *Porina*, 521 F.3d at 127.  Plaintiff cannot satisfy that requirement.  Factors relevant to a reasonableness determination include:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Del Monte Fresh Produce N.A., Inc. v. M/V AFRICA REEFER*, No. 12 Civ. 3597, 2013 WL 1129998, at *5 (S.D.N.Y. Mar. 19, 2013) (quotation marks and citations omitted).  Almost none

---

[6] Indeed, even if the website *did* contain interactive features, that would still not end the inquiry. *See, e.g.*, *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010) ("[W]hether specific personal jurisdiction could be conferred on the basis of an interactive website depends not just on the nature of the website but also on evidence that individuals in the forum state accessed the website in doing business with the defendant."); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003); *Mink v. AAAA Development, LLC*, 190 F.3d 333 (5th Cir. 1999).

of those factors favor Plaintiff.  Defendant has stated that it would be a weighty burden for him to defend the case in New York, a state with no discernible interest in a controversy centered around the State of California, and there is no reason for either the interstate judicial system or any particular state to favor resolution of this case in the Southern District of New York.  While it may be more convenient for Plaintiff, as assignee of EAD's claims, to litigate this case in New York, that consideration is far from sufficient to tip the scales.

Accordingly, the Due Process Clause of the Constitution prohibits an exercise of personal jurisdiction over Defendant in this case.

### 3.      Jurisdictional Discovery

At the jurisdictional stage, "district courts enjoy broad discretion in deciding whether to order discovery."  *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 811 (S.D.N.Y. 2005), *aff'd*, 538 F.3d 71 (2d Cir. 2008).  The failure to make out a prima facie case does not always bar jurisdictional discovery.  *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 n. 6 (2d Cir. 2007).  However, "if the plaintiff offers only speculations or hopes . . . that further connections to [the forum] will come to light in discovery," the court should dismiss the complaint without allowing discovery.  *Rosenberg v. PK Graphics*, No. 03 Civ. 6655, 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004) (quotation marks and citation omitted).  Given the absence of any reason even to speculate that Plaintiff could reveal further connections to New York State during jurisdictional discovery, and the weakness of the allegations offered by Plaintiff in support of personal jurisdiction, jurisdictional discovery is unwarranted.

**III.    Conclusion**

For the foregoing reasons, Plaintiff's motion for default judgment is DENIED and Defendant's motion to dismiss is GRANTED without prejudice.  The Clerk of Court is directed to close the motion entries at Dkt. Nos. 10 and 14, and to close this case.


SO ORDERED.


Dated: New York, New York
       April 25, 2013

_____
J. PAUL OETKEN
United States District Judge